The next case on the argument calendar is Soto-Olarte v. Mukasey Good morning, Your Honors. May it please the Court, I am Edgardo Quintanilla. I represent Mr. Soto-Olarte and his wife. This case involves two people, Mr. Soto and his wife. Both are petitioners before you. Mr. Soto in Peru was a politician, and he fled Peru because Sendero Luminoso was after him. The issue in this case, at least one of the issues that are before you, has to do with the rejection of the immigration judge and the BIA that Mr. Soto was not credible solely because of one particular police report. According to the IJ, the immigration judge, and the BIA, the report was not consistent with the testimony and the evidence presented on this case. We believe that the Court should, upon review of the entire evidence, of the extensive documentation that is before you, that the Court should find that it should be compelled to make a finding that is compelled to reverse the finding of a lack of credibility on this particular case. The police report, when examined closely with the declaration of Mr. Soto in his testimony, the police report coincides on several key respects. One of those key components, when it coincides, has to do with the date, the fact that two persons had invaded the home of Mr. Soto in June of 2003 in Peru, and the fact that a car alarm had gone off, the fact that the local neighborhood guards had come in, so there is a consistency. Before this Court, it has been, this Court has held that testimony, when deemed credible, is sufficient to make a finding that a claimant for asylum has presented a claim for asylum. So the fact that there is only one report that does not indicate that Shining Path was involved, a report that was prepared by the police in Peru, the Immigration Court, by giving all this weight to this report and ignoring the extensive documentation presented by Mr. Soto or Larte on this particular case. And you say extensive documentation. What are you referring to? Oh, referring, Your Honor, to the documentation that corroborates all the political participation of Mr. Soto, the testimony or the declaration of Mr. Soto, the documents including one letter from a city council in Peru saying to Mr. Soto, we're advising you to remain out of Peru because your life may be in danger. That is the documentation that I'm referring. What about the police report of the burglary? That police report appears to contradict with his account of it. Your Honor, you're correct when you say that it appears to contradict. Another reasonable way of looking at this is by saying that it meshes, that it simply is the police report is not saying that Shining Path was not involved. It is saying this is the statement that has been presented to us, and this is the statement that is being reported. Pursuant to the precedence before this Court regarding credibility, a judge has to deny, has to make a finding of lack of credibility, what is based on a conscientious reason. But at the same time, the immigration court has to provide to the applicant for asylum an opportunity to be heard on the very key issue on which the court has a doubt. A review of the record will show. What's the ---- Counsel, go ahead. The police report says it was a burglary. And I believe in your client says it was the Shining Path trying to terrify them. That is correct, Your Honor. And the reason he is saying that, because of all his past experiences with threats made against him, because here we have an example of somebody who was politically involved in Peru. And because of that political involvement, he had received those threats. My client, when asked very, very specifically, why did the Shining Path make threats against you, has found that AR page 89, my client responded, because of my political ideas and because of my vocational service to the city of La Victoria. So that statement itself, deemed credible, provides a nexus as to the next issue before you, as to whether the persecution of Mr. Soto was reasonable, whether he has a future fear of persecution. Counsel, didn't Mr. Soto also give some testimony that the police would often leave out a reference to the Shining Path because they didn't want to tangle with them or, you know, they tried to avoid commenting on the Shining Path? Your Honor is correct. Your Honor is basically referring to the declaration of Mr. Soto that he presented in support of his application for assignment. Specifically, it is found at AR page 126, and on the affidavit to Mr. Soto, he, at item 26, Mr. Soto said, I reported the incident to the police. The police treated the incident as an attempted burglary. I felt that the police did not want to get involved with allegations of the Shining Path. My client has presented a reasonable explanation. As to any discrepancy between the police report prepared by the Peruvian police and any statements made by Mr. Klein to the police. I've got a problem with his statement, but I'm sometimes reluctant in circumstances like this where we've got translation difficulties and we've got lay people who sometimes prepare these documents. But his explanation in paragraph 26 is I reported the incident to police. The police treated the incident as an attempted burglary. Well, it may be relying too much on the definition of burglary, but the police did not treat it as an attempted burglary. They treated it as a car break-in. The entirety of the police report is that we had people breaking in, two unknown persons fled over the wall after having broken into the car and there's nothing in the police report that suggests even an attempt to come into a building. What am I missing here? Your Honor, I understand your concern. I thought that the car was within a garage that's part of the structure. I don't know if that's right, but that was. Well, the car apparently was outside of the home. The police report, which is found at AR page 240, basically says that the neighborhood guard saw two unknown persons fled over the wall. And so when these two guards are making the reference that two unknown persons have fled over the wall, I take it to mean that it's referring to the wall of the house of Mr. Soto Olarte. That's what the police report contains, that statement, which is consistent with the statement of my client. I see. So my worry about being too technical about burglary and what is or is not burglary may be well taken. Yet I have to say that the police report is radically different. Well, maybe not radically. Substantially different from the narrative given by your client. Even if one says the police left out the Shining Path, it is the story of what happened, irrespective of whether we're talking Shining Path or not. The story is quite different. The story in the police report is they break into the car, they steal some stuff, they jump over the wall. The story given by him in his testimony is that they actually come into the house, they threaten him, he drives them away with his weapon. Those are very different stories. They are different stories. As to why all the details my client provided are not contained in the police report, I don't know, Your Honor. As to how the Peruvian police handles this particular issue, I don't know. What I do know is that based on the record, the immigration court had an opportunity to question my client about any discrepancy. And the questions of the immigration judge about the police report had nothing to do with the issue you have raised right now. But it had to do more with the dates. That's what the immigration judge in my client was able to explain why there were two separate dates that had to do with the coming and going from going to and from Venezuela. Right. That is correct, Your Honor. But there is some question, not very much. There's a little questioning by the IJ, or rather I should say questioning generally about this. He describes it. It's at 8R92. That's when the discussion regarding the police report begins by the IJ, Your Honor. This is now Ms. Starr, so it's the government's lawyer. You indicated you reported the incident to the police. Yes. They made a police report regarding. I don't know. That's an odd answer. I mean, of course he knows. He's already referred to it. Then judged to the client. You don't know if they made a police report? Yes. Answer. What they did was my statement. Did they make a report from your statement? Yes. And when did you go to make the report? After receiving the phone calls about a week later. But you're right. The judge did not ask to explain the difference between the testimony and the report. That is correct, Your Honor. And then to make the finding of lack of credibility that it cannot be a content reason because there is a case that may be job. Let's hear from the government and then we'll get in. Thank you, Your Honor. Thank you, Your Honor. Good morning. Tom Dupree for the United States. May it please the Court. The Board denied the Petitioner's claim for two reasons. First, the Petitioner lacked credibility. Second, the Petitioner failed to carry his burden of proof. Either basis is a sufficient one for this Court to deny the petition for review. Let me begin by addressing the adverse credibility finding. As was implicit in a number of Your Honor's questions, there is a marked contrast between the content of the police report and the Petitioner's testimony at the hearing. The Petitioner's counsel argued that the police did not include all the details that he allegedly provided because they feared implicating the Shining Path in the burglary. But I think it's evident that there's far more than that omission in the report. The report simply doesn't tell the same story that the Petitioner did. It's not a question of omitting reference to the Shining Path. It's a question of omitting any reference to a home invasion, which is obviously an extremely significant fact if you believe the Petitioner, that two men invaded his home while two stayed outside. They had to fire his gun to chase him out of his home, and yet none of that makes it into the police report. Even if the police were afraid of implicating the Shining Path, there's no reason why they wouldn't have told this tale exactly as Petitioner tells it with the home invasion, but just simply not attribute it to the Shining Path. And counsel, shouldn't the government, DIJ, confront him with that point then to see if he's got an explanation? I don't think that's required by this Court's case law, Judge Gould. I think also in this case it's important to note that the Petitioner himself was on notice of the contradiction. Obviously it was his own document, and this was the central fact in his narrative, this home invasion, and in fact on page 14 of the record, this is his brief to the BIA, he acknowledges that the Petitioner did defend himself on this point, that is to say the inconsistency in his declaration, where he sought to explain the inconsistency. The declaration, of course, was incorporated into the trial proceedings, so his explanation for the inconsistency was something he was aware of long before the hearing started. As he acknowledges in his brief, he was able to furnish his explanation, and even if his argument or his explanation were a reasonable one, I don't think it's one that's compelled by the evidence. I don't think the IJ was able to do that. So he explained ahead of time why the Shining Path wasn't mentioned, but he wasn't confronted with the statement about the discrepancy between home invasion and just a couple of guys in the car. So, you know, if that's what the IJ thinks is a reason to discredit him, should he put that on the table in the hearing? I don't think this Court's cases require that, Judge Gould. I acknowledge Your Honor's point that if this were an instance where an IJ was playing gotcha by digging into a 10,000-page record and finding some ostensibly insignificant fact that he would use to impugn the Petitioner's credibility, that might be a different case. But this is the Petitioner's document, and it's the seminal piece of evidence he has corroborating the basis for his asylum claim. I don't think that there's anything in this Court's case law that would require the IJ to alert the Petitioner to these obvious contradictions on the key piece of evidence he's proffered to support his case. I simply don't think there's any. Let me just ask this question. It's not the only evidence he offered. He kind of tells a tale of long-term political involvement and long-term threats or confrontation from the shining path. So I can't view the home or car entry issue as the only instance. Well, I agree with Your Honor that it didn't depend entirely on that. But I do stand by my characterization as the home invasion really was the central piece of his asylum claim. I think absent the home invasion, if the totality of his asylum claim were the anonymous calls he received, I think he would have an exceedingly weak case. I think it's the home invasion that's his basis for saying I have a credible fear of persecution. This was, again, I think it was a central element in his case. I'd also point out that in those cases where this Court has imposed a duty on an IJ to flush out a claim, it was often in situations where the Petitioner was proceeding pro se. Of course, here he was represented by counsel at trial. He submitted the document in advance, accompanied by a declaration explaining some of the inconsistencies in the document. And, again, I don't think this was a gotcha or a surprise. It's readily apparent that this police report directly contradicts his testimony. There's no two ways around it. The police noted that in the police report all that happened was people were in the vicinity of his home, they broke into his car, and they stole a bag of toys. That is markedly different from Petitioner's testimony at trial that he was in his house was invaded in the middle of the night by two men, and he had to fire a gun to chase them out. I also would point out that he waited eight days to report it to the police. It wasn't relied on by the IJ. But, again, I think that this entire story, central to his asylum claim, one fundamental document he had to support it with an obvious contradiction. Let me turn now in my remaining time to the second basis for the Board's finding. And, again, I think even if this Court were to discount the adverse credibility element of the IJ in the Board's holding, the other aspect of the Board's holding provides a legally sufficient basis for this Court to deny the PFR, and that is the Board concluded that the Petitioner did not succeed in carrying his burden of proof. The Board correctly noted that the Petitioner did not have any evidence other than his supposition to link the Shining Path to the home invasion. The people who allegedly invaded his house certainly didn't identify themselves. There was no testimony that there were any political comments or slogans, even. You just lost me. That is to say, if we assume that his testimony is truthful, his testimony is that they behaved very differently from people who were interested in stealing things, and rather behaved in a way that would be consistent with trying to intimidate him, because his testimony is that the guards saw these people outside and the people waited for him to come home. So burglars don't wait for the person to come home before they break into the house? Well, a few points. First, I'm not quite clear whether the guard's statement was that they were actually waiting for him to get home, or if the guard was simply saying something to the effect of if they wanted to commit a robbery, they should have waited until they knew no one was home. But let's assume that, Your Honor, is absolutely correct, and that's what the guard said. I don't think that's inconsistent with the notion that they wanted to go in the house and perhaps rob the homeowners. Some burglars might prefer to go into a vacant house where they could steal the property. Other burglars might intentionally break in when they see the homeowners at home, either because they think perhaps there's a safe in the house that the homeowners could open for them, or they want to kidnap the homeowners, or something along those lines. But again, I don't think that there's anything that the Petitioner can point to that establishes that the burglary, the home invasion, if it occurred, was committed by the Shining Path. Notably, even when he testified that he received anonymous calls a week or in the months following the burglary, they didn't take responsibility for the burglary. They simply said general threatening things, such as you won't escape us this time or things of that nature. But I think something that's notably absent from even the Petitioner's testimony, accepting it all as true, is any statement from the Shining Path that they were the ones responsible for the burglary. So I think the Board was quite correct in holding that even assuming Petitioner's credibility, which I don't think we should, but even assuming it, he failed to carry his burden of proof. If there are no further questions, the rest are abeast. Okay. Thank you very much.  One minute. Thank you, Your Honor. Well, on behalf of my clients, I just want to say that the Shining Path is a terrorist organization. And contrary to counsel for the government of the United States of America, terrorists leave no calling cards. In the case of Danez B. Job, this case, this court has held that a client seeking immigration court to provide a reasonable explanation when there is an inconsistency, when there is a discrepancy. And so Danez B. Job, the immigration judge, should have asked more questions, should have confronted the client more about this apparent inconsistency. Thank you, Your Honor. Okay. Thank you very much. Thank both of you for very good arguments. I'd like to thank Mrs. Dupree in particular because you redeemed the honor of the Immigration Service Counsel. You're the best and perhaps the only effective counsel I've heard for the government in immigration cases this week. So thank you. I appreciate that, Judge Noonan. I was going to note for the record that I did have the record in this case at the outset. Okay. And I had the record and I had reviewed it because Your Honor asked me. If the government could get a re-hearing on the ground of ineffective assistance of counsel, the government would get many, but not in your case. I respectfully disagree, but thank you, Your Honor. Okay, good. And the lawyers for both sides were very good. Thank you. Thank both of you. Okay. The case of Soto Olarte v. McKasey is now submitted.
judges: Noonan, Fletcher, Gould